# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 08-3822

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| James Andrew King, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 15, 2010
Filed: March 26, 2010

_____

Before GRUENDER and SHEPHERD, Circuit Judges, and LANGE,[1] District
Judge.

_____

GRUENDER, Circuit Judge.

James Andrew King pled guilty to being a felon in possession of a firearm, in
violation of 18 U.S.C. § 922(g). The district court found that King had three previous
convictions for violent felony offenses and was therefore subject to a minimum term
of 180 months' imprisonment under the Armed Career Criminal Act (ACCA). The

_____

[1]The Honorable Roberto A. Lange, United States District Judge for the District
of South Dakota, sitting by designation.

court sentenced King to the statutory minimum. The question presented in this appeal is whether King's adjudication of juvenile delinquency in 1995 qualifies as a conviction for a violent felony. Because we find that question cannot be answered without resorting to conjecture, we vacate King's sentence and remand for resentencing.

## I.     BACKGROUND

The ACCA provides that a defendant who violates § 922(g) is subject to a mandatory minimum term of 180 months' imprisonment if he has "three previous convictions . . . for a violent felony." 18 U.S.C. § 924(e)(1). A "previous conviction" for purposes of § 924(e)(1) "includes a finding that a person has committed an act of juvenile delinquency involving a violent felony." § 924(e)(2)(C). The statute defines the term "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

§ 924(e)(2)(B). Under this definition, an act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device may qualify as a violent felony, but only if the act of delinquency meets the other statutory criteria. *Id.*

King admits that he has two adult convictions for violent felony offenses. And King does not contest the fact that he was adjudicated a juvenile delinquent in 1995 for violating section 5-73-104 of the Arkansas Code, which at that time provided that

> [a] person commits the offense of criminal use of prohibited weapons if . . . he uses, possesses, makes, repairs, sells, or otherwise deals in any bomb, machine gun, sawed-off shotgun or rifle, firearm specially made or specially adapted for silent discharge, metal knuckles, or other implement for the infliction of serious physical injury or death which serves no common lawful purpose.

The disputed issue concerns the nature of the underlying act of juvenile delinquency; more precisely, which part of section 5-73-104 did King violate?

The Government produced two documents to prove the fact of King's juvenile adjudication and the nature of the underlying act of delinquency: the delinquent conduct adjudication order (a fill-in-the-blanks form used by the county chancery court) and the predisposition report (a one-page report prepared by a juvenile intake officer). The adjudication order says that King was charged with "criminal use of a weapon," in violation of section 5-73-104, but the order does not identify the weapon or the way that King allegedly used it. The label "criminal use of a weapon" is ambiguous; for while the title of section 5-73-104 is "criminal use of prohibited weapons," the statute criminalizes using, possessing, making, repairing, selling, or otherwise dealing in prohibited weapons. Effectively, "criminal use" is defined to include simple possession of certain weapons and various other acts that might not constitute actual use of such weapons.

The predisposition report does not resolve the ambiguity regarding the weapons charge, though it does recite some of the relevant facts ("Andy" is the defendant):

On 4-9-95, 911 received a disturbance call that Andy was involved in. As the deputy was on his way to the call he saw Andy walking carrying a rifle. Statements were made to the officers that shots had been fired. Also, at one point Andy had a knife and was told to drop the knife, which he did. (These actions took place at the King's home after the fight at [a] relative's home.) Andy and his brother Tim had been fighting at his relative's home, upsetting family members enough that they called 911 asking for help. The boys were physically fighting and calling each other names.[2]

King conceded at sentencing that the predisposition report shows that he possessed a rifle. Nevertheless, King argued that his juvenile adjudication could not be counted as a conviction for a violent felony because neither the predisposition report nor the adjudication order establish that the rifle he possessed was sawed off (sawed-off rifles are prohibited under section 5-73-104, but the statute says nothing about typical full-length rifles).

The district court accepted the premise that the records of King's juvenile adjudication do not conclusively establish that he possessed a sawed-off rifle. But the court suggested that it need not determine what weapon King was charged with "using" (*i.e.*, using, possessing, making, repairing, selling, or otherwise dealing in) because the fact of King's juvenile adjudication proved that King possessed *either* a sawed-off rifle or some "other implement for the infliction of serious physical injury or death which serves no common lawful purpose." As the court put it,

to be legitimately convicted under the statute [section 5-73-104], he would have to be in possession of a sawed-off rifle, or, you know, I mean, that's the way it's charged, "or other implement for the infliction of serious physical injury or death which serves no common lawful purpose." The knife is not described, but the knife could meet that

_____

[2]We have normalized the capitalization and corrected obvious punctuation errors.

-4-

definition, depending on what it was. I mean, an ordinary pocketknife has lots of lawful purposes, but there may be some kinds of knives that have no purpose other than inflicting injury on a human being. But he was convicted of possessing one of these kinds of implements that has no purpose other than infliction of physical injury or death and which can serve no common lawful purpose.

The court went on to find that this case "is directly on point with *Vincent*," referring to a decision in which we held that the defendant's previous conviction under section 5-73-104 was for a violent felony. *United States v. Vincent* (*Vincent I*), 519 F.3d 732, 733-34 (8th Cir. 2008), *vacated*, 555 U.S. ---, 129 S. Ct. 996 (2009). Based on these considerations, the court found that King's juvenile adjudication qualifies as a conviction for a violent felony and sentenced him to the mandatory minimum term prescribed by § 924(e)(1).

## II.    DISCUSSION

As we said at the outset, the question presented in this appeal is whether King's adjudication of juvenile delinquency in 1995 qualifies as a conviction for a violent felony. We begin our analysis by winnowing that general question down to more manageable size. We can state with confidence that the underlying act of juvenile delinquency satisfies one of the criteria for classification as a violent felony, since it would be punishable by imprisonment for more than one year if committed by an adult. *See* 18 U.S.C. § 924(e)(2)(B); Ark. Code Ann. §§ 5-73-104(c) (1995) (providing that a violation of the statute is at least a Class D felony), 5-4-401(a)(5) (1995) (providing that the maximum sentence for a Class D felony is six years' imprisonment). And King has never challenged the notion that his act of juvenile delinquency involved the use or carrying of a firearm or knife, so we will assume for purposes of this appeal that the use-or-carry provision of § 924(e)(2)(B) is satisfied as well. The Government does not argue that the underlying act of juvenile delinquency "has as an element the use, attempted use, or threatened use of physical

force against the person of another." § 924(e)(2)(B)(i). Nor does the Government argue that the act of juvenile delinquency "is burglary, arson, or extortion, [or] involves use of explosives." § 924(e)(2)(B)(ii). The dispositive question thus becomes whether King's juvenile adjudication was for an act of delinquency that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.*

After *Begay v. United States*, 553 U.S. 137, 128 S. Ct. 1581 (2008), a prior offense fits within the ACCA's "otherwise" clause only if it "pose[s] a similar degree of risk of physical injury as the example crimes and [is] similar in kind to the example crimes." *United States v. Williams*, 537 F.3d 969, 972 (8th Cir. 2008) (citing *Begay*, 128 S. Ct. at 1585-86)*.* An offense is considered "similar in kind" to burglary, arson, extortion, and crimes involving use of explosives if the offense "typically involve[s] purposeful, violent, and aggressive conduct." *United States v. Gordon*, 557 F.3d 623, 626 (8th Cir. 2009) (alteration in original) (quoting *Begay*, 128 S. Ct. at 1586).

To decide whether an adult conviction meets the two-part test set out in *Begay*, courts must apply the "categorical approach" adopted by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990). *See Nijhawan v. Holder*, 557 U.S. ---, 129 S. Ct. 2294, 2299 (2009). That approach calls for considering the relevant offense "generically, that is to say, . . . in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay*, 128 S. Ct. at 1584. We have joined several other circuits in holding that "the categorical approach should also be used in examining . . . a prior juvenile conviction." *United States v. Kirkland*, 450 F.3d 804, 807 (8th Cir. 2006) (citing *United States v. Richardson*, 313 F.3d 121, 126, 128 (3d Cir. 2002)); *accord United States v. Nevels*, 490 F.3d 800, 808-09 (10th Cir. 2007) (collecting cases). Although *Kirkland* examined a juvenile adjudication under the ACCA's "has as an element" clause, we are convinced that the categorical approach must also be applied in considering a juvenile adjudication under the ACCA's "otherwise" clause. We

apply the categorical approach in considering adult convictions under either clause, and we see no reason why juvenile adjudications should be treated any differently. *See, e.g.*, *United States v. Salean*, 583 F.3d 1059, 1061 (8th Cir. 2009) (applying the categorical approach in considering an adult conviction under the "has as an element" clause), *cert. denied*, 559 U.S. ---, 2010 WL 198049 (Feb. 22, 2010); *Gordon*, 557 F.3d at 625 (applying the categorical approach in considering an adult conviction under the "otherwise" clause). Thus, we are concerned with how the law defines King's act of juvenile delinquency, rather than with ascertaining his actual conduct on April 9, 1995.[3] *See Nevels*, 490 F.3d at 808-09; *Richardson*, 313 F.3d at 127-28.

The Supreme Court has said that "[the] categorical approach requires courts to choose the right category. And sometimes the choice is not obvious." *Chambers v. United States*, 555 U.S. ---, 129 S. Ct. 687, 690 (2009). Here, the "right category" cannot be determined solely from the fact of King's juvenile adjudication, for section 5-73-104 "places together in a single numbered . . . section several different kinds of behavior," *see id.* at 691. Moreover, section 5-73-104 criminalizes behavior involving several different kinds of weapons, including a catch-all class of weapons that includes every conceivable "implement for the infliction of serious physical injury or death which serves no common lawful purpose." Under these circumstances, the district court was permitted to "look beyond the complete statutory definition" to sources such as "the charging document . . . [or] some comparable judicial record" to determine which part of section 5-73-104 King violated (*i.e.*, "the right category"). *See Williams*, 537 F.3d at 973 (second quotation from *Shepard v. United States*, 544 U.S. 13, 26 (2005)); *see also Nijhawan*, 129 S. Ct. at 2299. The court was aware of the adjudication order and the predisposition report, but the court did not determine which part of section 5-73-104 King violated. Instead, the court found that the

---

[3]Throughout this opinion, we use the ACCA term "act of juvenile delinquency" in a generic sense, analogous to how we use the terms "offense" or "crime" when applying the categorical approach in cases involving contested adult convictions. *See Begay*, 128 S. Ct. at 1584; *Williams*, 537 F.3d at 972 n.1.

underlying act of juvenile delinquency necessarily involved possessing *either* a sawed-off rifle or some "other implement for the infliction of serious physical injury or death," such as a type of knife that "serves no common lawful purpose."

We hold that the district court misapplied the categorical approach by failing to "choose the right category" in which to place the underlying act of juvenile delinquency; indeed, the court failed to choose a category at all. On the present record, we cannot determine in the first instance whether King's juvenile adjudication involved possessing a sawed-off rifle as opposed to possessing some "other implement," such as a knife. If we put the Government's proof in its best light, the most we can say is that King was likely charged with possession of a prohibited weapon.[4] Although the narrative in the predisposition report indicates that King possessed a rifle and a knife, it does not identify which weapon King was charged with possessing. In the end, we cannot choose one of these categories without resorting to conjecture. Thus, we cannot affirm King's sentence, for it should go

_____

[4]Again, we are assuming for purposes of this appeal that King's juvenile adjudication satisfies the use-or-carry provision of § 924(e)(2)(B), even though that requirement apparently was overlooked by the parties and the district court. Indeed, the Government's position at sentencing and on appeal appears to be that King was charged with simple possession of a prohibited weapon. *See* Government's Br. at 6 ("[T]hough King argues that he was not in possession of a sawed-off rifle, his conviction serves as conclusive proof that he *possessed a weapon* which could have inflicted serious physical injury or death on another." (emphasis added)); *id.* at 14 ("King's [juvenile] conviction conclusively establishes that he was *in possession of a weapon* which had the capacity to inflict serious physical injury or death . . . ." (emphasis added)). Obviously, a person can possess a weapon without using or carrying it, but we are willing to assume that the underlying act of juvenile delinquency in this case involved carrying a firearm or knife rather than possession simpliciter. We will go no further than that, however, since the Government has not proved that King was charged with using a weapon, in the sense of actual use (*e.g.*, brandishing or firing the weapon). For the sake of concision, we will continue to refer to the crime of "possessing" a weapon rather than "possessing by carrying."

without saying that a sentence enhancement may not be applied on the basis of guesswork. *See United States v. Chambers*, 473 F.3d 724, 726 (7th Cir. 2007) ("[I]t is an embarrassment to the law when judges base decisions of consequence on conjectures . . . ."), *rev'd on other grounds*, 555 U.S. ---, 129 S. Ct. 687 (2009).

The Government suggested at sentencing that the uncertainty concerning the underlying act of juvenile delinquency did not matter because this court had held that any conviction under section 5-73-104 "necessarily is going to be a crime of violence [*i.e.*, violent felony] as 924(e) would define it." The district court adopted the Government's suggestion, finding that our decision in *Vincent I* was controlling. The Government's and the district court's interpretation of *Vincent I* was too broad.

To be sure, we held in *Vincent I* that the defendant's previous conviction under section 5-73-104 was for a violent felony. 519 F.3d at 733-34. But the underlying crime at issue in *Vincent I* involved the use or possession of a sawed-off shotgun. Having decided that use or possession of a sawed-off shotgun fit within the ACCA's "otherwise" clause, we had no occasion to consider whether the crime of possessing some "other implement for the infliction of serious physical injury or death," such as a type of knife that "serves no common lawful purpose," would also qualify as a violent felony. And we certainly did not decide, once and for all, that *every* conviction for violating section 5-73-104 qualifies as a conviction for a violent felony.

In any event, after King had been sentenced, the Supreme Court granted Vincent's petition for a writ of certiorari, vacated our decision in *Vincent I*, and remanded for further consideration in light of *Begay* and *Chambers*. *Vincent v. United States*, 555 U.S. ---, 129 S. Ct. 996 (2009). On remand, we made clear that Vincent's previous conviction under section 5-73-104 involved simple possession of a sawed-off shotgun. *United States v. Vincent* (*Vincent II*), 575 F.3d 820, 824-25 (8th Cir. 2009), *petition for cert. filed*, --- U.S.L.W. --- (U.S. Dec. 28, 2009) (No. 09-8320). Applying the "two-part test" set out in *Begay* and applied in *Chambers*, *id.* at 825, we held that

"possession of a sawed-off shotgun is similar, in kind as well as degree of risk posed, to the offenses listed in § 924(e)," *id.* at 827. Hence, we again concluded that Vincent's previous conviction was for "an ACCA-qualifying felony." *Id.* But we again had no occasion to address the crime of possessing some "other implement," such as a particularly dangerous knife, and we again did not purport to decide whether every conviction for violating section 5-73-104 qualifies as a conviction for a violent felony.

We acknowledge that *Vincent II* sometimes refers to "possession of a dangerous weapon" rather than "possession of a sawed-off shotgun." *See* 575 F.3d at 825 ("Possession of a dangerous weapon that has no lawful purpose creates a serious potential risk of physical injury to others."); *id.* at 826 ("Possession of a weapon that has only unlawful purposes makes it 'more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim.'" (quoting *Begay*, 128 S. Ct. at 1586)). But there is no doubt that the actual question presented was whether Vincent's previous conviction for possession of a sawed-off shotgun qualified as a conviction for a violent felony. *Id.* at 824-25, 827. Likewise, it is plain that our holding relates to the crime of possessing a sawed-off shotgun, since key parts of our analysis identify attributes of sawed-off shotguns that are not necessarily shared by other dangerous weapons, such as knives. *See, e.g.*, *id.* at 825 ("Sawed-off shotguns 'are inherently dangerous and lack usefulness except for violent and criminal purposes.'" (quoting *United States v. Childs*, 403 F.3d 970, 971 (8th Cir. 2005))); *id.* at 826 ("Like explosives, a sawed-off shotgun can inflict indiscriminate carnage."). Thus, while simple possession of a sawed-off shotgun meets the two-part test, it does not necessarily follow that possession of every other weapon that Arkansas sees fit to criminalize will also meet the test.[5]

_____

[5]We noted in *Vincent II* that "the Arkansas Supreme Court has held that a conviction for use of each prohibited weapon listed in [section 5-73-104]—including a sawed-off shotgun—has the element that the weapon 'will inflict serious physical injury or death *and* serves no lawful purpose.'" 575 F.3d at 823 (quoting *Bridges v.*

-10-

At present, we decline to decide in the abstract whether the crime of possessing a generic "implement for the infliction of serious physical injury or death which serves no common lawful purpose" (or a knife with those characteristics) qualifies as a violent felony under the ACCA's "otherwise" clause. The Government did not brief that question because it simply assumed that *Vincent II* was controlling. In the absence of a threshold finding about the underlying act of juvenile delinquency, addressing all of the various ways that King might have violated section 5-73-104 would be unwise; in fact, it would almost certainly produce a partially advisory opinion. Accordingly, we remand to the district court for further proceedings consistent with our description of the categorical approach and our explanation of the holding in *Vincent II*.[6]

---

*Arkansas*, 938 S.W.2d 561, 563 (Ark. 1997)). We gave at least some weight to the Arkansas Supreme Court's narrowing interpretation in finding that simple possession of a sawed-off shotgun poses a similar degree of risk of physical injury as the § 924(e) example crimes (burglary, arson, extortion, and crimes involving use of explosives). *See Vincent II*, 575 F.3d at 825. After *Begay*, however, "the degree of risk of physical injury is only half of the analysis." *Williams*, 537 F.3d at 972. We went on to hold in *Vincent II* that possession of a sawed-off shotgun is similar in kind to the example crimes. 575 F.3d at 825-27. But it does not necessarily follow that possession of every other weapon prohibited by section 5-73-104 (*e.g.*, metal knuckles) is similar in kind to burglary, arson, etc.

[6]If it is possible to determine on remand that King's juvenile adjudication involved possessing a sawed-off rifle, then *Vincent II* will control, even though *Vincent II* addressed the crime of possessing a sawed-off shotgun. In our view, the crimes of possessing a sawed-off shotgun and possessing a sawed-off rifle "amount to variations on a single theme," so the district court may "consider them as together constituting a single category." *See Chambers*, 129 S. Ct. at 691. If, on the other hand, it is not possible to determine whether King's juvenile adjudication involved possessing a sawed-off rifle as opposed to possessing some "other implement," such as a knife, then *Vincent II* is not on all fours with this case.

We do not impose any limitations on the evidence that the district court may consider on remand, so the court "can hear any relevant evidence . . . that it could have heard at the first hearing," *United States v. Dunlap*, 452 F.3d 747, 750 (8th Cir. 2006) (quoting *United States v. Cornelius*, 968 F.2d 703, 705 (8th Cir. 1992)). We note that this marks a departure from what we have described as "the traditional path" of limiting the Government to one bite at the apple. *United States v. Gammage*, 580 F.3d 777, 779-80 (8th Cir. 2009). We are convinced, however, that the circumstances in this case permit us to remand without limitations. *See Dunlap*, 452 F.3d at 750. In particular, both the Government and the district court mistakenly relied on an excessively broad interpretation of *Vincent I*, which might have impeded full development of the record. Perhaps more importantly, defense counsel did not clearly explain his objection to the sentence enhancement, either in his presentence memorandum or at the sentencing hearing. We are convinced that this objection was sufficient to preserve the issue for appellate review, but counsel's convoluted explanation seemingly added to the confusion about how to apply the categorical approach. Now that the issue is properly framed, we see no good reason to foreclose further development of the record.

Finally, we wish to make clear that nothing in this opinion should be read as casting doubt on the validity of King's juvenile adjudication. To the extent King makes a collateral attack on the validity of the 1995 adjudication, we summarily reject his argument. *See Daniels v. United States*, 532 U.S. 374, 382 (2001) ("[I]f, by the time of sentencing under the ACCA, a prior conviction has not been set aside on direct or collateral review, that conviction is presumptively valid and may be used to enhance the federal sentence."); *United States v. Reyes-Solano*, 543 F.3d 474, 478 (8th Cir. 2008) ("Deprivation of the constitutional right to counsel is the only ground upon which a prior conviction used to enhance a federal sentence may be collaterally attacked." (citing *Custis v. United States*, 511 U.S. 485, 487 (1994))). We presume that King's juvenile adjudication is valid; in other words, we presume that King violated section 5-73-104. But the categorical approach still required the district court

to "choose the right category" in which to place the underlying act of juvenile delinquency, *see Chambers*, 129 S. Ct. at 690, and the presumption of validity does not justify resorting to conjecture about which part of section 5-73-104 King violated. Deciding whether the right category is so uncertain that the § 924(e)(1) enhancement cannot be applied is distinct from the question whether the adjudication is valid—in this instance, one has nothing to do with the other.

## III.   CONCLUSION

For the foregoing reasons, we vacate King's sentence and remand for resentencing.

_____