# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1287

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Jamaal T. Williams, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  November 17, 2010
Filed:  December 14, 2010

_____

Before RILEY, Chief Judge, MELLOY and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A federal grand jury returned an indictment charging Jamaal Williams with being a felon in possession of a firearm, a violation of 18 U.S.C. §§ 922(g), 924(a)(2). After Williams pled guilty, the Presentence Investigation Report ("PSR") calculated an advisory guidelines range of 77 to 96 months' imprisonment, based on a total offense level of 21 and a criminal history category of VI.  In calculating the total offense level, the PSR applied a two-level enhancement under U.S.S.G. § 2K2.1(b)(4) (instructing to add two levels if the firearm is stolen) and a three-level reduction under § 3E1.1 (instructing to reduce by up to three levels for acceptance of responsibility) to a base offense level of 22.  The PSR identified this base offense level because (A)

the offense involved a semiautomatic firearm, and (B) Williams had at least one felony conviction for a crime of violence. *See* § 2K2.1(a)(3). The PSR cited Williams's 2002 Nebraska conviction for attempted felony escape as the qualifying crime of violence. According to the police report of that offense, as summarized in the PSR, Williams had initially been arrested in connection with a reported auto theft. While he was handcuffed, a police cruiser caught on fire. Taking advantage of the distraction, Williams fled on foot and was caught after a brief chase.

At sentencing, Williams did not object to the PSR's recitation of the facts underlying his escape offense, but he argued that the offense does not qualify as a crime of violence in light of the Supreme Court's decisions in *Begay v. United States*, 553 U.S. 137 (2008), and *Chambers v. United States*, --- U.S. ---, 129 S. Ct. 687 (2009). The Government argued that all escape offenses are crimes of violence under *United States v. Nation*, 243 F.3d 467 (8th Cir. 2001), *abrogated by Chambers*, 129 S. Ct. 687, and that, in any event, the facts of Williams's offense demonstrated that it was a crime of violence.

The district court concluded that *Nation* is no longer good law and that *Chambers* requires it to look at the facts of Williams's offense. In light of the unobjected-to facts reported in the PSR, the court determined that the 2002 escape conviction qualified as a crime of violence, warranting the base offense level of 22. Citing *United States v. Pearson*, 553 F.3d 1183 (8th Cir. 2009), the district court held that all escapes from custody are crimes of violence under current Eighth Circuit precedent and that the facts of Williams's offense demonstrate that he escaped from custody. After calculating a total offense level of 21, the court found that Williams's criminal history was overstated and reduced his criminal history category to V, which resulted in an advisory guidelines range of 70 to 87 months. The court sentenced Williams at the bottom of this range.

On appeal, Williams challenges the district court's determination that his 2002 escape offense qualifies as a crime of violence, as well as the substantive reasonableness of his sentence. We review a district court's sentencing decisions for reasonableness, using "the familiar abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 46 (2007). Before reviewing the substantive reasonableness of a sentence, we "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *Id.* at 51. In determining whether a procedural error has been committed, we review "the district court's factual findings for clear error, and its interpretation and application of the guidelines, de novo." *United States v. Byas*, 581 F.3d 723, 725 (8th Cir. 2009).

The advisory guidelines define "crime of violence" to include "any offense . . . punishable by imprisonment for a term exceeding one year," that either "has as an element the use, attempted use, or threatened use of physical force" or "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." § 4B1.2(a).[1] To determine whether a prior conviction qualifies as a crime of violence, we apply the "categorical approach," under which "we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay*, 553 U.S. at 141. When the statute giving rise to the conviction criminalizes both conduct that does and does not qualify as a crime of violence, "we apply a modified categorical approach, in which a court 'may refer to the charging

---

[1] Much of the precedent in this area, including *Begay* and *Chambers*, deals with the term "violent felony," under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"). However, we generally treat the term "crime of violence" under § 4B1.2(a) of the advisory guidelines the same as the term "violent felony" under the ACCA. *United States v. Hudson*, 577 F.3d 883, 885 n.3 (8th Cir. 2009), *cert. denied*, --- U.S. ---, 130 S. Ct. 1310 (2010) .

document, the terms of a plea agreement, jury instructions, or comparable judicial records,'" *Pearson*, 553 F.3d at 1186 (quoting *United States v. Montenegro-Recinos*, 424 F.3d 715, 717 (8th Cir. 2005)), in order to determine "which portion of the statute was the basis for conviction," *United States v. Ross*, 613 F.3d 805, 807 (8th Cir. 2010).

The parties agree that Williams was convicted under Neb. Rev. Stat. § 28-912, which provides that "[a] person commits escape if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave," § 28-912(1), and classifies escape offenses as either Class III or Class IV felonies, depending, *inter alia*, on whether the defendant "employs force, threat, deadly weapon, or other dangerous instrumentality to effect the escape," § 28-912(5)(b). Although our circuit's precedent once held that all escape convictions were crimes of violence, *see Nation*, 243 F.3d at 472, the Supreme Court's decision in *Chambers* "overrule[d] this circuit's precedent that all escapes—including failures to return or report to custody—are crimes of violence, but le[ft] intact our precedent holding that escape from custody is a crime of violence," *Pearson*, 553 F.3d at 1186.[2] Since the Nebraska statute at issue criminalizes both escape from custody (where a defendant "unlawfully removes himself from official detention," § 28-912(1)) and failure to report (where a defendant "fails to return to official detention," *id.*), it "covers conduct that does and does not trigger the career offender enhancement," *Pearson*, 553 F.3d at 1186, and is accordingly over-inclusive. Therefore, the district court correctly concluded that Williams's escape conviction should be analyzed using the modified categorical approach.

---

[2] It is still an open question in this circuit whether a walkaway escape qualifies as a crime of violence. *United States v. Jackson*, 594 F.3d 1027, 1029 n.2 (8th Cir. 2010).

In applying that approach, the district court based its determination that the prior offense qualified as a crime of violence on the unobjected-to factual assertions in the PSR, which recited the contents of a police report showing that Williams had been arrested and handcuffed by the police before he escaped. Under *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005), the inquiry under the modified categorical approach is limited to certain acceptable documents, and *Shepard* specifically rejects the use of police reports, *Shepard*, 544 U.S. at 15. Moreover, we have held that where "[t]he PSR expressly relie[s] on police reports . . . that would be inadmissible at sentencing under *Taylor* and *Shepard*," the PSR's factual assertions, even if a defendant does not object to them, are "not an adequate basis for affirming [the defendant's] sentence." *United States v. McCall*, 439 F.3d 967, 974 (8th Cir. 2006) (en banc), *abrogated in part on other grounds by Begay*, 553 U.S. 137.

Under the modified categorical approach, the court examines the *Taylor* and *Shepard* documents not to see how the particular crime at issue was committed on this occasion, but "*only* to determine which part of the statute the defendant violated." *United States v. Howell*, 531 F.3d 621, 622-23 (8th Cir. 2008) (emphasis in original); *see also Johnson v. United States*, --- U.S. ---, 130 S. Ct. 1265, 1273 (2010). The court then determines whether a violation of that statutory subpart constitutes a crime of violence "in the ordinary case." *Ross*, 613 F.3d at 807 (quoting *James v. United States*, 550 U.S. 192, 208 (2007)). While the police report might be probative of the factual circumstances of the offense, these facts do not help us determine the part of the statute under which Williams was convicted. Williams could have been convicted (perhaps by way of a plea agreement) of an offense that is different from the one we might suppose by examining the facts outlined in a police report. "[I]t should go without saying that a sentence enhancement may not be applied on the basis of guesswork." *United States v. King*, 598 F.3d 1043, 1048 (8th Cir. 2010). For these reasons, the district court procedurally erred by concluding that Williams's 2002 escape conviction was a crime of violence based on the information before it.

Furthermore, we conclude that the procedural error was significant. The Government does not argue that the error would be harmless, and its failure to argue harmless error "waives any right to such review." *See United States v. Cacioppo*, 460 F.3d 1012, 1025-26 (8th Cir. 2006). Even if we were to exercise our discretion to overlook the waiver, *see Lufkins v. Leapley*, 965 F.2d 1477, 1481 (8th Cir. 1992), we would conclude that the procedural error was not harmless because the district court "did not articulate any alternative sentence, and there is no clear indication on the record that the district court would have imposed the same sentence if [the defendant's] legal argument had prevailed," *United States v. Spikes*, 543 F.3d 1021, 1025 (8th Cir. 2008); *see also United States v. Icaza*, 492 F.3d 967, 971 (8th Cir. 2007) (holding that an error in calculating a defendant's guidelines range is harmless only if "the district court intended to provide an alternative sentence" that "is based on an identifiable, correctly calculated guidelines range").

Accordingly, we vacate Williams's sentence and remand to the district court for resentencing. At the initial sentencing hearing, both the Government and the district court relied on a mistaken understanding of the modified categorical approach, which may have impeded full development of the record. *See King*, 598 F.3d at 1050. Therefore, on remand the court "can hear any relevant evidence . . . that it could have heard at the first hearing," *id.* (alteration in original) (quoting *United States v. Dunlap*, 452 F.3d 747, 750 (8th Cir. 2006)), to determine which part of the Nebraska escape statute Williams was convicted of violating, based on documents that are acceptable under *Taylor* and *Shepard*, and whether a violation of that part of the statute constitutes a crime of violence in the ordinary case.[3]

—————————————————

---

[3] Because we find significant procedural error, we need not consider Williams's alternative argument that his 70-month sentence is substantively unreasonable. *See United States v. Pickar*, 616 F.3d 821, 829 (8th Cir. 2010).