# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 11-3429

———————

United States of America,

        Appellee,

v.

Sabranino Altranino Thompson,

        Appellant.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Northern District of Iowa.
\*
\*
\*

———————

Submitted: May 16, 2012
Filed: July 25, 2012

———————

Before RILEY, Chief Judge, MELLOY and GRUENDER, Circuit Judges.

———————

GRUENDER, Circuit Judge.

After a jury trial, Sabranino Thompson was convicted on two counts of distribution of cocaine base, one count of possession of cocaine base with intent to distribute, and one count of possession of marijuana with intent to distribute, all in violation of 21 U.S.C. § 841. The district court[1] sentenced Thompson to 300 months' imprisonment. Thompson appeals his convictions, challenging a jury instruction regarding "intent to distribute," the admission into evidence of a wage record from

---

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa, sitting by designation in the Northern District of Iowa.

the Iowa Workforce Development Agency, and the sufficiency of the evidence. We affirm.

## I.   BACKGROUND

The evidence at trial was as follows. Officers with the Cedar Rapids Police Department ("CRPD") encountered Thompson on June 24, 2010 during a traffic stop that resulted in the temporary impoundment of Thompson's vehicle, a Cadillac. At that time, Thompson provided the officers with his address and phone number. Later that day, a man who had previously worked with the CRPD as a paid informant and "controlled buy" purchaser approached CRPD officers, proposed making a controlled buy of illegal drugs from Thompson, and provided the officers with the same phone number and address that Thompson had given officers previously that day. The informant called Thompson to arrange a drug purchase, and the jury heard a recording of that phone call. During the call, the informant asked to purchase an "eight ball," which amounts to approximately 3.5 grams of cocaine, and indicated that he would pay $150. Thompson agreed to meet the informant.

Later that day, officers searched the informant to ensure he did not have any drugs in his possession, gave him $150, transported him to the address Thompson had given them, and observed the informant enter and remain inside for approximately one minute. The informant testified that while inside the apartment he gave Thompson the $150 and that Thompson gave him a baggie containing crack cocaine. The jury also watched video surreptitiously taken by the informant while inside the apartment. Upon leaving the apartment, the informant returned to the officers and gave them a baggie containing a hard, off-white substance. A lab technician subsequently analyzed the substance and testified that it amounted to 1.04 grams of cocaine base.

CRPD officers conducted a second controlled buy the next day using the same procedures and the same informant. The jury heard another recorded phone call in

which the informant arranged to meet Thompson. The jury watched video of the informant meeting Thompson outside the same address and heard the two of them refer to the $150 purchase the previous day. This time, Thompson entered the apartment alone and returned shortly thereafter. The video shows Thompson and the informant make a hand-to-hand transaction outside the apartment in which money can be seen changing hands. The informant testified that he again gave Thompson $150 in exchange for a baggie containing crack cocaine. The informant returned to the officers and gave them the baggie he obtained from Thompson. The lab technician testified that this baggie contained 0.99 grams of cocaine base.

Based on the two controlled buys, CRPD officers obtained a search warrant for the apartment where the two transactions occurred. The officers executed the warrant on July 2 and found cocaine residue on the kitchen counter and on a digital scale. They also found sandwich baggies. A narcotics officer testified that the digital scale and sandwich baggies were indicative of drug distribution. After searching the apartment, the officers searched the vicinity for Thompson's Cadillac and found it in the parking lot of a nearby building. After the June 24 traffic stop, the Cadillac had been registered in Thompson's name at an address in that building. The officers knocked on the door at that new address, and it was answered by Eleighcia Easter, Thompson's then-girlfriend. The officers noted an odor of burnt marijuana and asked whether Thompson was there. Easter confirmed that Thompson was there and allowed the officers to enter her apartment.

As the officers entered the apartment, they observed Thompson emerge from a bedroom and arrested him on a warrant stemming from the controlled buys. They found $740 in cash in Thompson's pocket. After Easter consented to a search of her apartment, the officers found marijuana in an ashtray in the living room and 33.04 grams of cocaine base in a cigar box on a nearby desk. They also found a black plastic bag containing several small zip-top bags on the floor by the desk. While searching the bedroom from which Thompson had emerged just before his arrest, the

officers found 153 small zip-top bags containing marijuana inside a Timberland bag. Investigators matched a fingerprint on the Timberland bag to Thompson.

At trial, the Government introduced evidence that Thompson previously had been convicted of felony drug distribution, as well as the above-mentioned evidence regarding the two controlled buys and the evidence obtained during the two apartment searches on July 2. Furthermore, Easter testified that she spent several hours per day with Thompson nearly every day in May and June 2010, that they frequently smoked marijuana together, and that Thompson always provided the marijuana, typically in small zip-top bags. She testified that Thompson was the only person who brought marijuana into her apartment between May and early July 2010. She also testified that the marijuana located in the Timberland bag and the crack cocaine did not belong to her. Although she had a roommate whose possessions were stored in a second bedroom and who had a key to the apartment, Easter testified that her roommate never stayed the night, had only been in the apartment two to three times per month, and did not have a key to enter the building. She also testified that Thompson received frequent phone calls and sometimes would leave her apartment to buy cigars at a nearby gas station but would return thirty minutes later without any cigars.

The Government also introduced evidence of Thompson's unexplained wealth. Easter testified that she never saw Thompson go to work or heard him talk about having a job, except that he occasionally braided hair, receiving up to $20 per occasion. Although she believed that Thompson did not have a regular job, she testified that she routinely saw him carrying a fair amount of cash, generally between $100 and $500. The Government introduced a motor vehicle purchase agreement dated May 13, 2010 showing that Thompson paid $4,600 in cash for his Cadillac. The Government also introduced a record from the Iowa Workforce Development

-4-

Agency ("IWDA")[2] showing no reported wages for Thompson's social security number during 2009 and 2010.

The jury returned unanimous verdicts of guilty on Counts I and II, the distribution counts based on the controlled buys on June 24 and 25, and on Counts III and IV, the possession with intent to distribute counts based on the cocaine and marijuana seized from Easter's apartment on July 2. The jury, however, returned a unanimous verdict of not guilty on Count V, which related to a subsequent arrest in November 2010 for possession with intent to distribute of 6.4 grams of cocaine base that officers found in between the cushions of a couch in close proximity to Thompson. Thompson appeals his conviction on each of Counts I through IV.

## II.    DISCUSSION

### A.    Jury Instruction

Thompson contends that the district court erroneously instructed the jury with respect to inferring an intent to distribute. "We review a district court's jury instructions for abuse of discretion and '[w]e will reverse a jury verdict when the errors misled the jury or had a probable effect on the jury's verdict.'" *United States v. Slagg*, 651 F.3d 832, 848 (8th Cir. 2011) (alteration in original) (internal citation omitted) (quoting *United States v. Faulkner*, 636 F.3d 1009, 1019-20 (8th Cir. 2011)). In contrast, we will affirm "if the entire charge to the jury, when read as a whole, fairly and adequately contains the law applicable to the case." *United States v. Wisecarver*, 644 F.3d 764, 772 (8th Cir.) (quoting *United States v. Webster*, 442 F.3d 1065, 1067 (8th Cir. 2006)), *cert. denied*, 565 U.S. ---, 132 S. Ct. 533 (2011).

---

[2]IWDA was "created to administer the laws of [Iowa] relating to unemployment compensation insurance, job placement and training, employment safety, labor standards, and workers' compensation." Iowa Code § 84A.1(1) (2012).

The district court instructed the jury that "[p]ossession of a large quantity of cocaine base, marijuana, paraphernalia used to aid in the distribution of drugs, or large sums of unexplained cash can support an inference of an intent to distribute." Thompson contends that the instruction misstated the holding of *United States v. Shurn*, 849 F.2d 1090 (8th Cir. 1988), "by leaving out two factors: '[the] high purity level [of the drugs]' and 'the presence of firearms.'" However, *Shurn* squarely held that the district court in that case did not err in instructing the jury that it could infer an intent to distribute merely from the possession of a large quantity of a controlled substance. *Id.* at 1095. In affirming the sufficiency of the evidence supporting the verdict, we indeed noted that "the intent to distribute . . . *may* be inferred from *such things as* the possession of a large quantity of a controlled substance, its high purity level, the presence of paraphernalia used to aid in the distribution of drugs, large sums of unexplained cash, and the presence of firearms." *Shurn*, 849 F.2d at 1093 (emphases added). Contrary to Thompson's contention, *Shurn* merely suggested that each type of evidence on that list independently may support a legitimate inference of intent to distribute; consideration of all of them is not required. Therefore, we reject Thompson's argument that the district court's intent-to-distribute instruction was erroneous.

## B.     Admission of the Iowa Workforce Development Agency Record

Thompson next contends that admission of the IWDA record violated the Confrontation Clause of the Sixth Amendment in light of *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). As described above, the Government offered the IWDA record to corroborate Easter's testimony that Thompson had no regular, legitimate employment. The Government argued in closing that Thompson's lack of regular employment, together with the $740 in cash officers found on him at the time of his arrest, the $4,600 in cash Thompson used to purchase the Cadillac on May 13, 2010, and Easter's testimony that Thompson regularly carried large amounts of cash, demonstrated that Thompson had unexplained wealth. The Government argued that

this unexplained wealth supported an inference that Thompson intended to distribute the cocaine base and marijuana the officers found in Easter's apartment when they arrested Thompson. The district court admitted the IWDA record as a non-testimonial business record not subject to Thompson's Confrontation Clause rights.

On appeal, Thompson concedes that "[b]usiness records under Federal Rule of Evidence 803(6) are not 'testimonial' for Confrontation Clause purposes." *See Melendez-Diaz*, 129 S. Ct. at 2539-40 (explaining that business records "are generally admissible absent confrontation . . . because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial"); *Crawford v. Washington*, 541 U.S. 36, 56 (2004) ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy."). Although Thompson does not appeal directly the district court's evidentiary ruling that the IWDA record qualified as a business record, he contends that admission of the record violated his Confrontation Clause rights, alleging that it contained hearsay-within-hearsay and did not comply with all of the technical requirements of Rule 803(6).[3] Thompson also contends that the IWDA record was testimonial because "the exhibit was prepared for the purpose of providing evidence against [him] at trial." We review the district court's Confrontation Clause ruling *de novo*. *United States v. Holmes*, 620 F.3d 836, 840 (8th Cir. 2010).

---

[3] Specifically, Thompson contends that his Confrontation Clause rights were violated by admission of the IWDA record because (1) "[n]o hearsay exception was even proffered concerning the hearsay from the provider of the wage information to the preparer" of the IWDA record and (2) the Government failed to provide a foundation that "the declarant of the record had knowledge to make an accurate statement," the latter argument stemming from a technical requirement of Rule 803(6).

As an initial matter, the Government's introduction of the IWDA record as evidence in violation of the hearsay rule or without complying with the specific technical requirements of Rule 803(6) does not by itself constitute a Confrontation Clause violation. Although compliance with the demands of Rule 803(6) may be *sufficient* to alleviate Confrontation Clause concerns, this does not mean that each of the technical requirements of Rule 803(6) is *necessary* for the IWDA record to pass muster under the Confrontation Clause. In the Confrontation Clause context, the threshold issue is whether the record being proffered is testimonial in nature. *See United States v. Mashek*, 606 F.3d 922, 930 (8th Cir. 2010) ("Business records under Rule 803(6) are *non-testimonial statements* to which the Confrontation Clause does not apply." (emphasis added) (internal citation omitted)). Thompson's Confrontation Clause arguments directed solely to hearsay issues are, therefore, misdirected.[4]

Thompson does, however, contend that the IWDA record was testimonial, arguing that "the exhibit was prepared for the purpose of providing evidence against [him] at trial." *See Melendez-Diaz*, 129 S. Ct. at 2539-40. He cites as support an affidavit of self-authentication offered pursuant to Rule 902(11) ("the Mardesen Affidavit"). The Mardesen Affidavit declares that IWDA "makes and maintains [records of employment] in the regular course of its activities and as a matter of regular practice" and that part of Mr. Mardesen's duties with IWDA include "providing copies of those [records] for legal proceedings." Thompson argues that admission of the IWDA record violated his Confrontation Clause rights because "the primary purpose, in fact the only purpose, of the exhibit was to create an out-of-court

_____

[4]Moreover, with respect to Thompson's hearsay-within-hearsay argument, he fails to identify what specific statement in the IWDA record constitutes hearsay-within-hearsay. *See Fed. R. Evid.* 801 (defining hearsay, in part, as "a statement" and defining "a statement" as "a person's . . . assertion, or nonverbal conduct, if the person intended it as an assertion"). In reporting no wages for Thompson, the IWDA record contains no assertions by a "provider of the wage information to the preparer" of the IWDA record. We thus reject this argument.

-8-

substitute for trial testimony." *See Bullcoming v. New Mexico*, 564 U.S. ---, 131 S. Ct. 2705, 2720 (2011) (Sotomayor, J., concurring) ("To determine if a statement is testimonial, we must decide whether it has 'a primary purpose of creating an out-of-court substitute for trial testimony.'" (quoting *Michigan v. Bryant*, 562 U.S. ---, 131 S. Ct. 1143, 1155 (2011))).

It is true that the Confrontation Clause, like the hearsay rule, bars the admission of documents kept in the regular course of business as part of a regularly conducted business activity "if the regularly conducted business activity is the production of evidence for use at trial." *Id.* (quoting *Melendez-Diaz*, 129 S. Ct. at 2538). Thompson's argument, however, fails because the Mardesen Affidavit does not indicate that the IWDA record was prepared for the purposes of litigation, but it merely indicates that Mardesen prepared a copy of some of the *existing* IWDA employment records so that this copy could be introduced at trial. Furthermore, the Mardesen Affidavit declares that the record was made "by, or from information transmitted by, a person with knowledge of those matters . . . at or near the time that the wages were earned and reported" and that the records were "kept in the course of regularly conducted business activities" of the IWDA as part of its regular business practices.[5] Moreover, the IWDA makes and maintains individual employment

---

[5]We note that Rule 803(6) requires that the proponent of evidence being admitted as a business record must establish "by the testimony of . . . [a] qualified witness, or by a certification that complies with Rule 902(11)," that the record was made "at or near the time [of the matter it records] by—or from information transmitted by—someone with knowledge," that "the record was kept in the course of a regularly conducted activity" of an organization, and that "making the record was a regular practice of that activity." Even had Thompson directly appealed the district court's Rule 803(6) determination, we would find no abuse of discretion in the district court's determination that the IWDA record qualified as a business record under Rule 803(6) based on the facts set out in the Mardesen Affidavit. *See United States v. Gustafson*, 528 F.3d 587, 590 (8th Cir. 2008) (noting that we review evidentiary rulings for an abuse of discretion).

records "for the purpose of providing employment services to the individual and the employing unit," Iowa Admin. Code r. 877-25.13(1)(a) (2012), not for the purpose of litigation. Thus, the Mardesen Affidavit is sufficient to establish that the IWDA record was not originally created as a substitute for trial testimony. Because the IWDA record itself was not created for the purpose of establishing or proving some fact at trial, admission of a certified copy of that record did not violate Thompson's Confrontation Clause rights. *See Mashek*, 606 F.3d at 930 (holding that logs of customers' pseudoephedrine purchases created and maintained by pharmacies in the regular course of business pursuant to state law were non-testimonial business records).[6]

## C.    Sufficiency of the Evidence

Thompson contends that the evidence was insufficient to support the guilty verdicts on Counts I through IV. We review *de novo* the sufficiency of the evidence to sustain a conviction. *United States v. Honarvar*, 477 F.3d 999, 1000 (8th Cir. 2007). We will affirm unless, viewing the evidence in the light most favorable to the Government and accepting all reasonable inferences that may be drawn in favor of the verdict, no reasonable jury could have found Thompson guilty. *See United States v. Walker*, 393 F.3d 842, 846 (8th Cir. 2005).

---

[6]Both the majority and dissenting opinions in *Melendez-Diaz* noted that a clerk's certificate authenticating "a record—or a copy thereof—for use as evidence" was traditionally admissible even though the certificate itself was testimonial, having been "prepared for use at trial." *Compare Melendez-Diaz*, 129 S. Ct. at 2538-39 *with id.* at 2552-53 (Kennedy, J., dissenting). To the extent Thompson contends that a copy of an existing record or a printout of an electronic record constitutes a testimonial statement that is distinguishable from the non-testimonial statement inherent in the original business record itself, we reject this argument.

*1.      Counts I and II*

To find Thompson guilty of distributing cocaine base, the jury was required to find beyond a reasonable doubt that Thompson (1) intentionally transferred cocaine base to another person and (2) knew at the time of the transfer that the substance was cocaine base or a controlled substance. *See United States v. Payton*, 636 F.3d 1027, 1045 (8th Cir.), *cert. denied*, 565 U.S. ---, 132 S. Ct. 349 (2011); *United States v. Sheppard*, 219 F.3d 766, 769 (8th Cir. 2000). Thompson argues that the convictions depend on the reliability of the paid informant's testimony because both transactions took place outside the view of the CRPD officers. He contends that no reasonable jury could have relied on that testimony because the informant was a drug addict who had been convicted of numerous crimes, some involving dishonesty. He also argues that the informant's testimony was not reliable because the video and audio recordings of the June 24 and 25 controlled buys did not capture every detail of the transactions as recounted by the informant and because the price the informant paid for the crack cocaine exceeded its market value. We must reject these challenges to the informant's credibility, however, because a witness's credibility is for the jury to decide. *See United States v. Aldridge*, 664 F.3d 705, 715 (8th Cir. 2011) ("This court does not weigh the credibility of the witnesses or the evidence. The jury has the sole responsibility to resolve conflicts or contradictions in testimony, and the credibility determinations are resolved in favor of the verdict." (internal citation omitted)); *United States v. Hodge*, 594 F.3d 614, 618 (8th Cir.), *cert. denied*, 560 U.S. ---, 130 S. Ct. 3401 (2010) ("A jury's credibility determinations are well-nigh unreviewable.").

Moreover, the Government presented evidence to corroborate the informant's testimony that Thompson knowingly and intentionally transferred cocaine base to the informant on June 24 and again on June 25. The jury heard a recording of the June 24 phone call in which the informant called the phone number Thompson had

previously given the police and asked to purchase an "eight ball," and Thompson agreed to meet the informant after the informant indicated he would pay $150. The jury could have reasonably concluded that the video of the transaction corroborated the informant's testimony that he gave Thompson the $150 and that Thompson gave him a baggie containing crack cocaine. The officers confirmed that, immediately after the transaction, the informant gave them a baggie containing what laboratory analysis confirmed was 1.04 grams of cocaine base. Similar evidence corroborated the informant's testimony that Thompson gave him 0.99 grams of crack cocaine in exchange for $150 on June 25. This time, the video of the transaction clearly depicted Thompson and the informant making a hand-to-hand transaction in which money can be seen changing hands. In the recording of that June 25 transaction, the informant discussed with Thompson the $150 transaction the two completed the previous day. Contrary to Thompson's suggestion, there was significant evidence corroborating the informant's testimony that Thompson sold him the crack cocaine during the controlled buys on June 24 and June 25. *See United States v. Delgado*, 653 F.3d 729, 737 (8th Cir. 2011) (finding overwhelming evidence of guilt where a detective testified that he purchased cocaine directly from the defendant, a surveillance officer provided corroborating information, and three of four transactions were recorded on audio or video), *cert. denied*, 565 U.S. ---, 132 S. Ct. 1066 (2012). We conclude that the evidence was sufficient to sustain Thompson's conviction on Counts I and II for distribution of cocaine base.

### 2. Counts III and IV

To sustain a conviction for possession with intent to distribute under 21 U.S.C. § 841, the jury must find beyond a reasonable doubt that Thompson (1) knowingly possessed a controlled substance and (2) intended to distribute some or all of it. *United States v. Weaver*, 554 F.3d 718, 721 (8th Cir. 2009). "Possession can be actual or constructive, and 'an individual has constructive possession of contraband

if he has . . . dominion over the premises in which the contraband is concealed.'" *United States v. Finch*, 630 F.3d 1057, 1060 (8th Cir. 2011) (alteration in original) (quoting *United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002)). Constructive possession need not be exclusive. *United States v. Johnson*, 944 F.2d 396, 402 (8th Cir. 1991).

Thompson contends that the Government did not prove that he knowingly possessed the crack cocaine and marijuana that the officers found in Easter's apartment. Thompson argues that the jury should have inferred that Easter had exclusive control over the cocaine because it was found in a common area of her apartment inside a cigar box that belonged to her and also contained her photographs. Thompson also argues that his fingerprint on the Timberland bag containing the marijuana was insufficient to establish dominion and control over all the marijuana in the Timberland bag.

Contrary to Thompson's arguments, a jury could reasonably conclude that Thompson constructively possessed the 33.03 grams of crack cocaine and the 153 zip-top bags of marijuana that the officers found in Easter's apartment on July 2. Both the cocaine and the marijuana were found in areas of the apartment over which Thompson exercised dominion and control. Easter testified that Thompson stayed at the apartment frequently over the two months prior to July 2, both during the day and overnight. She testified that she sometimes would give Thompson her key to the apartment so that he could stay in the apartment even when she was not there. She also testified that she did not know there was cocaine in the apartment, that the cocaine and the marijuana did not belong to her, and that Thompson had arrived at the apartment the night before with several bags after an overnight trip. She further testified that her roommate was in the apartment only infrequently and did not have a key to enter the building. We again refuse Thompson's invitation to usurp the jury's role by weighing Easter's credibility. *See Aldridge*, 664 F.3d at 715.

-13-

Other evidence supports the verdicts as well. Thompson registered his Cadillac to Easter's apartment, and the officers found Thompson in the apartment at the time they seized the drugs, emerging from the very bedroom where the marijuana was found. Easter testified that Thompson previously provided her with marijuana packed in zip-top bags, and the marijuana found by the officers was packaged in zip-top bags, while more zip-top bags were found near the cocaine in the common room. Furthermore, the officers matched Thompson's fingerprints to a print found on the Timberland bag containing the marijuana. Taken together, the evidence is sufficient to permit the jury to conclude that Thompson exercised dominion over the bedroom in which the marijuana was found and over the common areas in Easter's apartment and was thus in constructive possession of the marijuana and cocaine base found therein. *See United States v. Harris*, 310 F.3d 1105, 1111 (8th Cir. 2002) (affirming a conviction for possession of crack cocaine found on the same floor as the defendant's bedroom based on testimony that the defendant had sold crack before and had done so at least once in that bedroom); *United States v. Boyd*, 180 F.3d 967, 980 (8th Cir. 1999) (finding sufficient evidence of possession where the defendant was arrested coming out of a bedroom in which the cocaine was found in a bag containing the defendant's property).

With respect to the cocaine base only, Thompson also contends that there was no evidence that he knew that it was cocaine or another controlled substance. However, as discussed above, the jury reasonably concluded that Thompson had twice distributed crack cocaine on June 24 and 25, just a week prior to his arrest. The Government also introduced evidence that Thompson previously had been convicted of felony drug distribution. The jury could reasonably infer that Thompson possessed the cocaine knowing that it was cocaine or another controlled substance. *See Sheppard*, 219 F.3d at 769.

Finally, Thompson contends that there was insufficient evidence of his intent to distribute the drugs seized in Easter's apartment. With respect to the cocaine base, Thompson's possession of more than 33 grams and his unexplained cash resources support the jury's inference that he possessed the cocaine with the intent to distribute it. *See United States. v. Ausler*, 395 F.3d 918, 920 (8th Cir. 2005) (noting that 30.7 grams of crack "is admittedly a distribution quantity of that controlled substance"); *United States v. Brett*, 872 F.2d 1365, 1370 (8th Cir. 1989) ("[Intent to distribute] may be inferred solely from the possession of a large quantity of drugs."); *United States v. Knox*, 888 F.2d 585, 588 (8th Cir. 1989) (finding possession of over 14 grams of cocaine and almost $5,000 in cash sufficient to support inference of intent to distribute). This inference is further supported by the officers' testimony that they found sandwich baggies with the corners torn off in the cigar box where they found the cocaine, that such evidence is consistent with cocaine distribution, and that Thompson packaged the cocaine he sold the informant on June 24 and 25 in baggie corners. *See United States v. Williams*, 181 F.3d 945, 949-50 & n.7 (8th Cir. 1999).

Similarly, the officers seized approximately 260 grams of marijuana packaged in 153 zip-top bags. A narcotics officer testified that this amount of marijuana was much greater than the up to 42 grams of marijuana that could be considered a "user" quantity. Based on the total amount of marijuana, its packaging in separate user-quantity amounts, Easter's testimony that Thompson provided her with marijuana in similar packaging, and Thompson's sizeable, unexplained cash resources, a reasonable jury could have concluded that Thompson intended to distribute the marijuana seized on July 2. Because there was sufficient evidence to allow a reasonable jury to find each element of possession with intent to distribute with respect to both the cocaine and the marijuana, we also reject Thompson's challenge to the sufficiency of the evidence on Counts III and IV.

## III. CONCLUSION

For the foregoing reasons, we affirm.

_____