# United States Court of Appeals
## For the Eighth Circuit
_____

No. 23-2196
_____

United States of America

*Plaintiff - Appellee*

v.

Norman Thurber

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: January 11, 2024
Filed: July 8, 2024
_____

Before SMITH, Chief Judge,[1] GRUENDER and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

A jury convicted Norman Thurber of six counts of production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e), stemming from videos recovered from Thurber's cell phone depicting him engaging in sadomasochistic sex

---

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024.  See 28 U.S.C. § 45(a)(3)(A).

acts with a minor female. The district court sentenced him to 20 years' imprisonment on each count, with the sentences running concurrently, and imposed 10 years of supervised release to follow. Thurber appeals, challenging various trial rulings, the sufficiency of the evidence, and the district court's imposition of standard conditions of supervised release in the written judgment that it did not orally pronounce at sentencing. Having jurisdiction under 28 U.S.C. § 1291, we affirm Thurber's convictions, but we vacate the portion of the judgment imposing the standard conditions of supervised release and remand to the district court for resentencing limited to the standard conditions.

I.

Thurber's convictions arise from his conduct in June 2020, when he engaged in sexual relations with a 15-year-old girl. Thurber and his victim, A.H., initially began communicating online, before Thurber traveled from Heber Springs, Arkansas, to Corpus Christi, Texas, to pick her up. Together, they traveled back to Thurber's residence in Heber Springs, where they engaged in sexual activity. Thurber recorded six videos on his cell phone of A.H. engaged in various sex acts, which included A.H. performing oral sex on Thurber while wearing a dog collar and a leash, A.H. licking Thurber's anus, and Thurber inserting a screwdriver into A.H.'s anus and vagina. In addition to the visual depictions, the videos captured Thurber's voice providing commentary about the sex acts; in the video involving the screwdriver, Thurber can be heard commenting as he moves the screwdriver from A.H.'s anus to her vagina, "She's even double holing, double fucking dipping, folks." Further, in one video Thurber can be heard telling A.H. to "[l]ook at daddy," and in another he is heard making A.H. respond to commands.

At some point on the same night the videos were recorded, A.H. left Thurber's house and made contact with the Heber Springs Police Department. After initially telling officers that she was 18 years old, she admitted that she was 15 years old and that she had run away from her home in Corpus Christi. A.H. detailed her interactions with Thurber to the officers, after which they obtained a search warrant

for Thurber's residence. Officers executed the search warrant and seized from Thurber's residence two cell phones, one of which contained the six videos of A.H. engaging in sex acts that form the basis of Thurber's convictions. When Thurber was questioned by officers after being given Miranda[2] warnings, he admitted to meeting A.H. online and to driving to pick her up in Corpus Christi. He also admitted to the sexual interactions with A.H. but maintained that he believed that A.H. was 18 years old and that he and A.H. were in an adult, consensual relationship. Thurber also explained the graphic nature of the sex acts by claiming that he was into "BDSM" and liked "dirty sex."

On December 1, 2020, Thurber was indicted on six counts of production of child pornography. Prior to trial, Thurber filed a motion, pursuant to Rule 412(b) of the Federal Rules of Evidence, seeking to introduce evidence that A.H. represented herself to Thurber as being 18 years old to support an affirmative defense of mistake of age. The district court ruled that Thurber was not entitled to present mistake of age as an affirmative defense, citing Eighth Circuit precedent. The district court ruled that Thurber could introduce evidence that A.H. represented herself to be 18 years old, but only insofar as it was evidence that A.H. was actually 18 years old, as age was an element of the offense.

The matter proceeded to a two-day jury trial in August 2022. At trial, the Government called as a witness Heber Springs Police Department Detective Daniel Malone, who testified that he had interviewed A.H. in June 2020, and that he had reviewed text messages exchanged between Thurber and A.H. The Government then sought to introduce three exhibits, marked as Trial Exhibits 10, 11, and 12, all related to A.H.'s age. Exhibit 10 was a copy of a Texas Department of Public Safety Certified Abstract Record, which detailed A.H.'s biographical information, including her birthdate, which was in early 2005; Exhibit 11 was a photograph of A.H.'s Texas identification card, which included a photograph of A.H. and her birthdate; and Exhibit 12 was a copy of A.H.'s birth certificate and an accompanying

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

affidavit from a records custodian. Thurber objected to the introduction of each of the exhibits under the Confrontation Clause, asserting that the exhibits were testimonial. The district court sustained Thurber's objection as to Exhibit 11, the photograph of A.H.'s identification card, but denied it as to Exhibits 10 and 12. The Government then questioned Detective Malone about Exhibits 10 and 12. Detective Malone stated that Exhibit 10, the copy of the abstract record, was issued on behalf of A.H. and confirmed that it was for the same person he had interviewed in Heber Springs in June 2020. He also confirmed that the exhibit contained A.H.'s personal information according to the state of Texas, including her birthdate, and testified that the picture of the individual on the Exhibit was the same person he had interviewed. Detective Malone testified that Exhibit 12 appeared to be a birth certificate from the state of Texas for A.H., that it reflected her birthdate, that the birthdate was the same as the birthdate in Exhibit 10, and, based on that birthdate, A.H. would have been 15 years old in June 2020.

During Detective Malone's testimony, the Government also sought to introduce two photographs extracted from Thurber's cell phone that A.H. sent to Thurber during their text-message exchange. Thurber objected to the introduction of these exhibits, asserting that the Government selected only portions of the text-message exchange between A.H. and Thurber and that the rule of completeness required the district court to allow the introduction of additional portions of the conversation between A.H. and Thurber. The district court overruled the objection, and Detective Malone testified that he recognized the person in the two photographs as A.H. Detective Malone also testified that, based on his review of the text-message exchange, A.H. sent the pictures to Thurber because Thurber told her to do so. Detective Malone further testified about his interviews with Thurber and stated that Thurber told him that he had traveled from Heber Springs to Corpus Christi to pick A.H. up, and that this was consistent with the text messages Detective Malone had reviewed between Thurber and A.H.

The Government also called as a witness FBI Special Agent Daniel Turner, who testified about his involvement in the investigation into Thurber. Agent Turner testified about the process by which he extracted the text messages between Thurber and A.H. and videos of A.H. and Thurber from Thurber's cell phone. Agent Turner spoke generally about his review of the text messages, and explained that during the text-message conversation, A.H. and Thurber discussed Thurber coming to pick A.H. up in Corpus Christi. Agent Turner also testified about Thurber's trip to Texas to pick up A.H., which had been contemporaneously documented by the text-message exchange between Thurber and A.H. Agent Turner also stated that, in the text-message exchange, Thurber asked A.H. to send him photos of herself, and A.H. complied.

Agent Turner then testified about the contents of each of the six videos that formed the basis of the charges against Thurber, detailing to the jury what the videos depicted before the videos were played for the jury. The Government also sought to question Agent Turner about an additional video that was recovered from Thurber's cell phone which depicted A.H. standing nude in the shower with her face in full view but was not charged as one of the counts in the indictment. Thurber objected to the introduction as exhibits of the video of A.H. standing nude in the shower and a still image of A.H. pulled from that video, arguing that neither exhibit was charged in the indictment, that the additional exhibits were cumulative as proof A.H. was the individual in the videos, and that the introduction of these exhibits was prejudicial to Thurber. The district court overruled the objection, after which Agent Turner testified about the video, explaining that it showed A.H. standing nude in the shower and being instructed on what to say by Thurber.

At the close of the evidence, Thurber moved for a judgment of acquittal, asserting that the evidence was insufficient for a jury to find him guilty beyond a reasonable doubt. As relevant to this appeal, Thurber specifically challenged the sufficiency of the evidence to prove A.H.'s age and Thurber's intent to use, coerce, entice, induce, persuade, or employ A.H. to engage in the sex acts for the purpose of making a visual depiction of a minor, asserting that he acted with the purpose of

creating a visual depiction of two consenting adults. The district court denied the motion, concluding that the record contained sufficient evidence to allow the jury to make the determination that the Government proved its case beyond a reasonable doubt.

The jury returned a guilty verdict on all counts. The district court sentenced Thurber to 20 years' imprisonment on each count, with the sentences to run concurrently, and 10 years of supervised release. As to supervised release the district court stated at sentencing that it was imposing as special conditions that Thurber participate in sex offender treatment; be subject to computer monitoring; not access the internet without approval of his probation officer; not have any direct contact with the victim or children under the age of 18 without the permission of his probation officer; not go to or remain at any place where children under the age of 18 are likely to be; receive a mental-health assessment; and cooperate with the probation office's direction to report to any agencies for sexual predator and sexual offender notification and registration statutes. The district court did not impose any other conditions of supervised release at the hearing, but when the final judgment was entered, the district court included 13 standard conditions of supervised release that it had not mentioned at the sentencing hearing.

II.

Thurber first asserts that the district court violated his Confrontation Clause rights when it allowed the Government to introduce the Texas Department of Public Safety Certified Abstract Record and a copy of A.H.'s birth certificate. Thurber asserts that the exhibits are testimonial in nature, implicating his right to confront the witnesses against him, specifically alleging that the Government used these Exhibits to avoid calling A.H. as a witness, where she would be subject to cross-examination. "Although we typically review evidentiary rulings for an abuse of discretion, de-novo review applies when a constitutional right is at stake." United States v. Zephier, 989 F.3d 629, 635 (8th Cir. 2021) (citations omitted). "Under the Sixth Amendment, a defendant has the right to confront those who 'bear testimony'

against him.  Therefore a witness may not give 'testimony against a defendant' without appearing at trial, unless that witness is unavailable and the defendant had previously had an opportunity for cross-examination." United States v. Causevic, 636 F.3d 998, 1002 (8th Cir. 2011) (citations omitted).

With regard to documents that a defendant asserts violate the Confrontation Clause, "the threshold issue is whether the record being proffered is testimonial in nature." United States v. Thompson, 686 F.3d 575, 581 (8th Cir. 2012). "Although the [Supreme] Court in Crawford[ v. Washington, 541 U.S. 36 (2004)] declined to define the term 'testimonial,' it gave examples of documents that usually fall within the 'core class of testimonial statements' covered by the Confrontation Clause, including 'affidavits, custodial examinations, [and] prior testimony that the defendant was unable to cross-examine.'"  Causevic, 636 F.3d at 1002 (third alteration in original) (citations omitted).  "Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324 (2009).  The Confrontation Clause "bars the admission of documents kept in the regular course of business as part of a regularly conducted business activity 'if the regularly conducted business activity is the production of evidence for use at trial.'" Thompson, 686 F.3d at 581 (citation omitted).

First, the Texas Department of Public Safety Certified Abstract Record is not testimonial.  Thurber asserts that this exhibit was created in preparation for trial because the abstract was obtained only five days before trial and A.H. was issued a Texas identification card for the first time only two months before trial.  While the temporal proximity between both the time A.H. first obtained the identification card and trial and between the time the Government obtained the abstract and trial suggests a closer nexus between the two, the dispositive fact here is that the identification card and abstract were not created by the Texas Department of Public Safety in anticipation of litigation.  See United States v. Williams, 720 F.3d 674, 699

(8th Cir. 2013) ("We conclude that the fingerprint cards are business records admissible pursuant to Federal Rule of Evidence 803(6) because they were created 'in the regular course of business,' and not 'solely for an "evidentiary purpose,"' . . . [so defendant's] Sixth Amendment Confrontation Clause right was not violated." (citations omitted)).

That the Government relied on the abstract as evidence of A.H.'s age does not mean that the issuance of the abstract or identification card were for the purpose of litigation; just as the fingerprint cards in Williams "were created as part of a routine . . . procedure and not in anticipation of litigation" and "for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial," so too was the Texas Department of Public Safety abstract. See id. at 698 (citation omitted). Further, there is no evidence to suggest that the Texas Department of Public Safety was aware that the identification card or abstract were to be used by the Government as evidence of A.H.'s age. See id. at 699 ("Our determination is bolstered by the fact that the entity that took [defendant's] fingerprints—Arizona law enforcement—was unaware that [defendant] was wanted in Nebraska in connection with the marijuana conspiracy and, further, did not arrest [defendant] for conspiracy-related charges in Arizona.").

Second, the copy of A.H.'s birth certificate and the accompanying affidavit similarly are not testimonial. Thurber asserts that the document was undisputedly created in preparation for trial and therefore is testimonial. However, Thurber does not seriously assert that the birth certificate itself was created for the purposes of trial, instead arguing that the *copy* was prepared shortly before trial and for that purpose. As this Court has held before, "[b]ecause the . . . record itself was not created for the purpose of establishing or proving some fact at trial, admission of a certified copy of that record did not violate [defendant's] Confrontation Clause rights." Thompson, 686 F.3d at 582. Further, with respect to the accompanying affidavit from the records custodian, we have also held that a written certification attesting to the authenticity of the business record is not testimonial. United States v. Johnson, 688 F.3d 494, 504 (8th Cir. 2012).

-8-

Finally, Thurber asserts that this Court held in Causevic that a record is testimonial where it is used as substantive proof of the charged crime. However, Thurber's argument misreads Causevic. There, we found that the introduction of a judgment from a Bosnian criminal court violated the Confrontation Clause because the Government attempted to use it not merely to show that the defendant had previously been convicted but rather "to show that [defendant] in fact committed the crime of which he was convicted. This is a difference that makes for a legal distinction." Causevic, 636 F.3d at 1002. Concluding from the conviction record that the facts underlying the conviction were true, particularly where the conviction had occurred in absentia and the document the Government sought to introduce had been translated into English, id. at 1001, requires an inferential step that implicates the Confrontation Clause. There is no similar issue here; the documents conclusively state A.H.'s age without requiring any inference as was required in Causevic. Because neither exhibit is testimonial, the Confrontation Clause is not implicated, and the district court did not err in overruling Thurber's objection to their introduction.

## III.

Thurber next asserts that the district court's admission of Government exhibits depicting A.H. standing nude in a shower resulted in a constructive amendment or variance to the indictment because the indictment does not contain charges based on either this video of A.H. or the still image that was pulled from it. "We review de novo whether a constructive amendment to the indictment occurred." United States v. Hill, 835 F.3d 796, 799 (8th Cir. 2016). "Whether a variance exists, and, if so, whether that variance prejudiced [the defendant] are questions of law that we review de novo." United States v. Buchanan, 574 F.3d 554, 565 (8th Cir. 2009) (alteration in original) (citation omitted).[3] "'[A] constructive amendment changes the charge,

---

[3]The Government asserts that Thurber did not object to the introduction of the exhibits depicting A.H. nude in the shower. However, the trial transcript reveals that Thurber's counsel specifically objected to the video and still image of A.H. on the basis that it was a "video or picture that's not charged in the indictment." This

while the evidence remains the same; a variance changes the evidence, while the charge remains the same.' An indictment is constructively amended only by 'the admission of evidence that proves the essential elements of an uncharged offense.'" United States v. Jefferson, 725 F.3d 829, 835 (8th Cir. 2013) (alteration in original) (citations omitted).

We first consider Thurber's claim that the inclusion of these exhibits resulted in a constructive amendment to the indictment.

> A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner—often through the evidence presented at trial or the jury instructions—that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment. With a constructive amendment, "the Fifth Amendment right not to 'be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury'" is implicated, and thus a constructive amendment of an indictment is reversible error per se. In reviewing an appeal based on a claim of constructive amendment, we consider whether the admission of evidence or the jury instructions created a "substantial likelihood" that the defendant was convicted of an uncharged offense.

United States v. Whirlwind Soldier, 499 F.3d 862, 870 (8th Cir. 2007) (citations omitted). Here, there is no "substantial likelihood" that Thurber was convicted of an uncharged offense. The indictment against Thurber charged him with six separate counts and clearly identified the six videos that formed the basis of each count. At trial, the Government questioned Agent Turner about each individual video that formed the basis of a count in the indictment, and Agent Turner clearly identified the videos which related to each count. And, when the Government questioned Agent Turner about the exhibits depicting A.H. standing nude in the shower, it specifically stated that those exhibits did not form the basis of a charge in the

---

objection was sufficient to preserve Thurber's argument that a constructive amendment or variance to the indictment occurred.

indictment. Before asking Agent Turner to discuss these exhibits, the Government stated, "I want to move to the next video that you found that's not charged in the indictment, but you talked about earlier there's a video of AH in the shower. Is that right?" Because the Government clearly identified to the jury which videos were charged in the indictment and which video and associated image were not, we conclude that there is no substantial likelihood that the jury convicted Thurber of an offense that was in addition to those charged in the indictment. See id. We thus conclude that no constructive amendment occurred.

We next consider Thurber's claim that the inclusion of the exhibits resulted in a fatal variance.

> A fatal variance occurs "when the evidence presented proves facts that are 'materially different' from those proved in the indictment." A variance between the indictment and proof at trial is subject to the harmless error rule, and requires reversal "only if the variance actually prejudiced the defendant." Our primary consideration "is whether the indictment fully and fairly apprised the defendant of the charges he or she must meet at trial."

United States v. Stephens, 888 F.3d 385, 388 (8th Cir. 2018) (citations omitted). Here, there is no evidence that Thurber was not fully and fairly apprised of the charges that he would face at trial. While, as the Government concedes, Thurber did not receive Rule 404(b) notice that the exhibits would be used at trial, Thurber was well aware of the six counts against him and of the videos referenced in each count, and he was aware that the videos supporting the charges had been taken on a particular date, and that other videos had been captured on that date, even if they were not charged as separate counts in the indictment. See United States v. Begnaud, 783 F.2d 144, 148 (8th Cir. 1986) (finding no fatal variance when the indictment set out two specific representations made in furtherance of a scheme to defraud, and the prosecution offered evidence of, and the jury instruction allowed the jury to consider, other misrepresentations defendants made). The jury was also instructed that each count was charged as a separate offense and that the jury was required to consider

the proof regarding each count separately. "[T]he [G]overnment never wavered in its theory of the case at trial," United States v. Adams, 604 F.3d 596, 600 (8th Cir. 2010), and the introduction of these exhibits did not alter the evidence Thurber was expected to defend against. We conclude that no fatal variance thus occurred.

IV.

Thurber also challenges the sufficiency of the evidence, asserting that the Government failed to meet its burden of proving, beyond a reasonable doubt, that he committed the offense of production of child pornography. According to Thurber, absent the introduction of the exhibits which he asserts were erroneously admitted, the evidence was insufficient to prove that A.H. was the person depicted in the videos or that she was under the age of 18. Further, Thurber asserts that the evidence was insufficient to prove that he voluntarily and intentionally employed, used, persuaded, induced, enticed, or coerced A.H. to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct, as required by the statute. "Examining the evidence in the light most favorable to the verdict, '[w]e review de novo the denial of a motion for judgment of acquittal based on the sufficiency of the evidence.'" United States v. Hamilton, 929 F.3d 943, 945 (8th Cir. 2019) (alteration in original) (citation omitted). In conducting this review, "[w]e 'also accept all reasonable inferences in favor of the verdict.' We will reverse the conviction only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id. (citation omitted).

A defendant violates 18 U.S.C. § 2251(a) when he:

employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct.

"A defendant 'uses' a minor for purposes of § 2251(a) if he photographs the minor engaging in sexually explicit conduct to create a visual depiction of such conduct." United States v. McCloud, 590 F.3d 560, 566 (8th Cir. 2009).

First, as stated in Part II, the district court properly admitted Exhibits 10 and 12, which provided sufficient evidence for the jury to conclude that A.H. was under the age of 18 at the time Thurber made the video recordings. Further, these exhibits, in combination with the properly admitted exhibits of A.H. standing nude in the shower, with her face in full view, see supra Part III, were sufficient to allow a jury to conclude that A.H. was the individual depicted in the videos. Second, Thurber did not argue in his motion for judgment of acquittal that there was insufficient evidence regarding his intent to have A.H. engage in the sexually explicit conduct for the purpose of creating a visual depiction, which results in forfeiture of his claim. While Thurber challenged the intent element as part of his motion for judgment of acquittal, this argument was couched in terms of his intent to engage in the prohibited conduct *with a minor* rather than his intent to engage in the conduct more broadly. United States v. Samuels, 874 F.3d 1032, 1036 (8th Cir. 2017) (stating that "[w]hen a defendant raises specific grounds in a Rule 29 motion, grounds that are not specifically raised are waived on appeal" (citation omitted)). Where a defendant raises grounds he did not raise below, "[a]t most, we review such forfeited issues for plain error." Id. And, with plain-error review, "the party seeking relief must show that there was an error, the error is clear or obvious under current law, the error affected the party's substantial rights, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Poitra, 648 F.3d 884, 887 (8th Cir. 2011).

Under plain-error review, the record contains sufficient evidence to allow the jury to conclude, beyond a reasonable doubt, that Thurber had the requisite intent for A.H. to engage in sexually explicit conduct for the purpose of creating a visual depiction. The jury heard Agent Turner's testimony about each of the videos and watched at least portions of each video. The videos were filmed from Thurber's first-person point of view, suggesting that he was the one holding the recording

-13-

device, and Thurber's narration on the videos suggests that he intended to make a visual depiction, specifically as to the videos where he is heard narrating the sex acts he is performing and using the word "folks," as if he is communicating with an audience, and where he asks A.H. to "look at daddy" and respond to commands. Together, this evidence is sufficient for the jury to have made the requisite factual finding regarding Thurber's intent. See United States v. Fortier, 956 F.3d 563, 567-68 (8th Cir. 2020) (stating that certain facts, coupled with the content of videos, "allowed the jury to draw the inference that the recordings themselves were no accident and that [defendant] was trying to perfect them for future viewing"). The evidence was thus sufficient to support Thurber's convictions.

V.

Thurber next argues that the district court erred when it instructed the jury that a person is "used" for the purposes of § 2251(a) if "they are photographed or videotaped," asserting that the instruction should have included the requirement that the videotape or photograph depict the minor "engaging in sexually explicit conduct to create a visual depiction of such conduct," as stated in the statute. "Jury instructions are usually reviewed for abuse of discretion, but where . . . 'statutory interpretation is required, "it is an issue of law that we consider de novo."'" United States v. Mast, 938 F.3d 973, 975 (8th Cir. 2019) (citations omitted). However, where, as here, "a party fails to timely object to an instruction at trial, . . . we review only for plain error." Poitra, 648 F.3d at 887.

Jury Instruction Number 7 instructed the jury as to the elements of the offense, followed by definitions of specific terms used in the elements. In relevant part, Instruction Number 7 reads as follows:

> The crime of production of child pornography, as charged in Counts One through Six of the Indictment, has four elements, which are:

-14-

*First*, at the time alleged, A.H.[] was under the age of eighteen years;

*Second*, Norman Thurber knowingly employed, used, persuaded, induced, enticed, or coerced A.H. to engage in sexually explicit conduct;

*Third*, Thurber acted with the purpose of producing a visual depiction of such conduct; and

*Fourth*, Thurber knew or had reason to know that such visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported across state lines or in foreign commerce by any means, including by computer or cellular telephone.

. . .

**Definitions**

A person is "used" if they are photographed or videotaped.

The term "sexually explicit conduct" means actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, oral-anal, and includes lascivious exhibition of the genitals or pubic area of any person.

The district court did not err, much less plainly so, in instructing the jury as to the definition of the term "used." In United States v. Lohse, we rejected a defendant's argument, under a plain error standard of review, that § 2251(a) "requires 'either active participation by the minor or active sexual conduct to an unconscious minor by an adult defendant.'" 797 F.3d 515, 521 (8th Cir. 2015) (citation omitted). There, the district court instructed the jury that the victim was "'used' if she was photographed or videotaped," and we found "no plain error in the instructions," particularly given circuit precedent finding that "[t]he 'use' component 'is fully satisfied for the purposes of the child pornography statute if a child is photographed in order to create pornography.'" Id. (quoting United States v. Fadl, 498 F.3d 862, 866 (8th Cir. 2007)). Further, Thurber's argument simply

-15-

ignores the rest of the jury instruction; each element of the offense is listed, and the language he challenges is part of the definitional section, not part of an element. Thurber's argument is without merit, as "the entire charge to the jury, when read as a whole, fairly and adequately contains the law applicable to the case." Thompson, 686 F.3d at 579 (citation omitted).

## VI.

Thurber also asserts that the district court erred when it prevented him from presenting a complete defense by prohibiting him from introducing additional portions of the text messages he exchanged with A.H. Specifically, Thurber asserts that the text messages were relevant to a central issue in the case—whether A.H. was under 18 years old—and would have provided context to the text messages discussed with witnesses and the pictures from the messages that were introduced at trial. Thurber also asserts that the Government opened the door to this evidence by questioning its law enforcement witnesses about the text messages between A.H. and Thurber. "We review a district court's evidentiary rulings for abuse of discretion. Reversal is warranted only if the district court's evidentiary rulings constitute a clear and prejudicial abuse of discretion." United States v. Never Misses A Shot, 781 F.3d 1017, 1027 (8th Cir. 2015) (citation omitted). But where "the challenge implicates a constitutional right, our review is *de novo*." United States v. Arias, 74 F.4th 544, 550 (8th Cir. 2023). However, "[a]n error by the trial court, even one affecting a constitutional right, is forfeited—that is, not preserved for appeal—'by the failure to make timely assertion of the right.'" United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005) (en banc) (citation omitted). Preserving an error for review requires a defendant to make a timely objection that clearly states the grounds. Id. "Errors not properly preserved are reviewed only for plain error[.]" Id.

The Government asserts that Thurber did not preserve his claim that he was not permitted to present a complete defense because he did not raise it below. We agree. When Thurber objected to the introduction of the photographs pulled from

-16-

the text messages exchanged between Thurber and A.H., his argument was premised on the rule of completeness and his assertion that, without the text messages being introduced, the photos lacked context. Nowhere in this discussion did Thurber raise the issue that the refusal to allow him to introduce the text messages between him and A.H. affected his ability to present a complete defense. Because Thurber did not clearly assert his inability to present a complete defense as a ground for his objection, we apply plain-error review to Thurber's claim.

"'[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense,' which includes the right to present testimony of witnesses that is material and favorable to their defense and complies with the rules of evidence." United States v. Holmes, 413 F.3d 770, 774 (8th Cir. 2005) (alteration in original) (quoting Crane v. Kentucky, 476 U.S. 683, 690-91 (1986)). Thurber argues that Rule 106 of the Federal Rules of Evidence mandates the inclusion of the entire text message exchange between A.H. and Thurber. Rule 106 provides that "[i]f a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection." This rule "is 'designed in part to avoid misleading impressions created by taking matters out of context.'" United States v. Farrington, 42 F.4th 895, 900 (8th Cir. 2022) (citation omitted). We have provided the parameters for when additional parts of a written or recorded statement should be admitted pursuant to the rule of completeness:

> "Additional parts of [a] recording [or written statement] can be admitted if they are necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) [e]nsure a fair and impartial understanding." "[T]he party urging admission has the burden to specify the portion of the testimony that is relevant to the issue at trial and that qualifies or explains portions already admitted."

Id. (first, third, and fourth alterations in original) (citations omitted).

Here, the introduction of the additional portions of the text-message exchange did not serve any of these purposes. The Government introduced the images extracted from the text-message exchange for the purpose of showing that A.H. was the person in the videos that were charged in the indictment. The testimony the Government elicited from Detective Malone regarding the images extracted from text messages was related to the question of why A.H. sent Thurber the images, with Detective Malone testifying that A.H. did so upon Thurber's request. Further, Agent Turner testified generally about the text messages, stating that Thurber asked A.H. to send him pictures, that Thurber and A.H. talked about Thurber driving to Corpus Christi to pick up A.H., and that the text messages detailed Thurber's trip from Heber Springs to Corpus Christi.

Thurber's stated purpose for requesting inclusion of additional portions of the text-message exchange was to rebut the Government's evidence that A.H. was under the age of 18, with Thurber seeking to rely on text messages where A.H. represented her birth year to Thurber as 2002 rather than 2005. This is a purpose entirely unrelated to the Government's aim in introducing the text-message images and related testimony, so it cannot be said to explain the admitted evidence, provide context, avoid misleading the jury, or ensure a fair and impartial understanding of the admitted evidence. See id. Because the purpose for which Thurber sought to introduce the additional portions of the text messages differed so markedly from the Government's purpose in introducing extracted images from the text-message exchange and associated testimony, it was also more likely to mislead the jury and leave it with an unfair and partial understanding of the evidence. Further, before trial, the district court ruled that Thurber was not entitled to present evidence that he was mistaken about A.H.'s age, while permitting him to introduce evidence that A.H. actually was 18 years of age or older. Thurber's claim that the rule of completeness requires admission of additional portions of the text-message exchange is, at best, an attempted end run around this previous order.

Thurber also asserts that the Government opened the door to the introduction of the additional text messages by questioning Detective Malone and Agent Turner about specific contents of the text messages. We disagree. "The doctrine of opening the door allows a party to explore otherwise inadmissible evidence on cross-examination when the opposing party has made unfair prejudicial use of related evidence on direct examination." United States v. Durham, 868 F.2d 1010, 1012 (8th Cir. 1989) (citation omitted). "We have allowed the use of otherwise inadmissible evidence to clarify or rebut an issue opened up by . . . counsel on cross-examination." United States v. Beason, 220 F.3d 964, 968 (8th Cir. 2000). Here, while the Government witnesses discussed some of the general content of the text messages, it did not open the door to allowing Thurber to introduce additional portions of the exchange that included A.H. misrepresenting her age to Thurber. Because, as stated above, the Government elicited this testimony for an entirely different purpose than Thurber sought to address, the additional portions of the text messages cannot be said to "clarify or rebut" an issue to which the Government opened the door. See id. The district court therefore did not err, much less plainly so, in refusing to allow Thurber to introduce additional portions of the text message exchange between A.H. and Thurber.

VII.

Thurber next asserts that the district court violated his constitutional rights by not allowing him to present evidence regarding his lack of knowledge of A.H.'s real age. Specifically, Thurber asserts that the Ninth Circuit has held that the First Amendment requires that a defendant be allowed to present a reasonable mistake-of-age defense to a charge of production of child pornography pursuant to 18 U.S.C. § 2251, and he was thus entitled to present that defense here. "We review the district court's denial of a proffered legal defense de novo." United States v. Young, 613 F.3d 735, 743 (8th Cir. 2010). Thurber's argument is entirely without merit. While the Ninth Circuit has indeed held that the First Amendment demands that a defendant be able to present a reasonable mistake-of-age defense in a § 2251 case, United States v. U. S. Dist. Ct. for the Cent. Dist. of Cal., 858 F.2d 534, 542

(9th Cir. 1988), this Court has explicitly held the opposite. In <u>United States v. Wilson</u>, we stated that while "[o]ther circuits have split as to whether the First Amendment requires reading a reasonable-mistake-of-age defense into [§ 2251]," in this Circuit, "the First Amendment does not require a reasonable-mistake-of-age defense to charges of producing child pornography in violation of section 2251(a)." 565 F.3d 1059, 1068-69 (8th Cir. 2008). Thurber's argument is therefore squarely foreclosed by our precedent. The district court did not err in denying Thurber the opportunity to present a mistake-of-age defense.

VIII.

Finally, Thurber asserts that the district court imposed 13 standard conditions of supervised release in its written judgment that were not pronounced at sentencing, and, because the written judgment conflicts with the oral sentence, these 13 conditions should be stricken. Generally, "[w]e review the district court's imposition of the terms and conditions of supervised release for an abuse of discretion." <u>United States v. Drapeau</u>, 644 F.3d 646, 655 (8th Cir. 2011) (citation omitted). However, we have reviewed de novo a claim that "imposing . . . supervised release conditions though a written judgment after the district court failed to expressly state those conditions at the oral pronouncement" violated a defendant's double jeopardy rights. <u>United States v. White Bull</u>, 646 F.3d 1082, 1096 (8th Cir. 2011). We thus review Thurber's claim de novo. <u>See</u> <u>United States v. Johnson</u>, 765 F.3d 702, 710 (7th Cir. 2014) ("We review a claim of an inconsistency between the oral and written judgments *de novo*, comparing the sentencing transcript with the written judgment to determine whether an error occurred as a matter of law.").

At sentencing, the district court stated:

I'm going to order Mr. Thurber to the Bureau of Prisons for 20 years. I'm going to order him to ten years of supervised release upon release. . . .

-20-

. . . .

I'm going to order him to participate in sex offender treatment as part of his supervision. He'll have to pay $10 per session with that. I'm going to order him -- I'm not going to order most of the -- he'll be 76. I don't know that I'm going to order him not to look at sexually explicit conduct.

. . . .

. . . I will not go with a he can't look at magazines or go in adult book stores, but I am going to order that he not -- that he have monitoring of his computer so that he can't go on these websites where he can look at pornography or reach out to other young people or other people online and engage in sex. I don't know the appropriate language for that right now, but I'll include it in the judgment. That's the gist of what I'm going to put as part of his supervised release.

. . . I'm going to order that he not access the Internet without approval of the probation officer and that probation will install that software. Probation will be allowed to examine his computer during his supervised release to see what types of searches he's been engaging in.

. . . .

Probation will provide state officials with all information required for under the sexual predator and sexual offender notification registration statutes.

I'm going to order that you not have any direct contact with any children under the age of 18 without permission of the probation officer. I'm going to order that you not go to or remain at any place where you know children under the age of 18 are likely to be.

I'm going to order that you participate in a substance abuse treatment program which may include drug and alcohol testing, outpatient counseling. And you'll have to pay the $10 copay, but that's based on your ability to pay.

-21-

I'm going to order you to receive a mental health assessment. If it's determined that you need counseling, you'll have to receive that. There is a $10 copay there, but that will also be waived if you're unable to pay it.

I'm going to order you to cooperate in the collection of DNA.

I'm not going to order you to pay a fine, but I am going to order you to pay the $100 special penalty assessment times six for each count, which is $600.

The district also imposed a condition prohibiting Thurber from contacting A.H. at the Government's request and removed the drug-and-alcohol testing condition after defense counsel objected. Shortly after the hearing, the district court entered the written judgment. The judgment included the special conditions announced at sentencing, but it also included 13 standard conditions that were not mentioned during the oral pronouncement.

Although we have previously enunciated the rule that "[w]here an oral sentence and the written judgment conflict, the oral sentence controls," United States v. Foster, 514 F.3d 821, 825 (8th Cir. 2008) (citation omitted), recently, in nearly identical circumstances, we vacated the standard conditions of supervised release that conflicted with the oral pronouncement and remanded for resentencing to allow the district court to consider in the first instance whether any standard conditions of supervised release were consistent with or necessarily included within the scope of the conditions announced at sentencing. See United States v. Walker, 80 F.4th 880, 882 (8th Cir. 2023); United States v. Palomerez-Heredia, No. 23-2160, 2024 WL 2316652, at *3 (8th Cir. May 22, 2024) (per curiam). Recognizing that, "[a]s a practical matter, it would be virtually impossible to supervise a defendant or verify compliance with the . . . special conditions that were orally pronounced without at least some of the standard conditions of supervised release being imposed," and that, at resentencing, Thurber may challenge any standard conditions he feels should not be imposed upon him, Walker, 80 F.4th at 882, we follow the same approach here. We thus vacate the standard conditions of supervised release

and remand to the district court to consider them in the first instance. On resentencing, "[a]ny standard conditions of supervised release . . . which may be reimposed as part of any oral pronouncement may then be incorporated into an amended and reconciled judgment and commitment order." Id. at 882-83.

## IX.

For the foregoing reasons, we affirm Thurber's convictions but vacate the portion of the standard conditions of supervised release that conflicts with the oral pronouncement. We remand to the district court for a resentencing consistent with this opinion.

_____